# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL THOMAS, #B-71744, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10–cv–902–MJR–SCW |
| | ) |
| DR. FUENTES, et al., | ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. § 636(b)(1)(B)**, **FEDERAL RULE OF CIVIL PROCEDURE 72(b)**, and **LOCAL RULE 72.1(a)** for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff has failed to exhaust his remedies as to all Defendants who raise the issue, **GRANT** Defendants Feinerman's, Fe Fuentes', Mary Ann Kohring's, and Deana Medford's Motion to Dismiss (Doc. 45) and Motion for Summary Judgment (Doc. 66) and Defendants Derek Flatt's and Chad Todaro's Motion for Summary Judgment (Doc. 64), and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Findings of Fact

### A. Procedural Background

Plaintiff filed his Complaint on November 10, 2010 alleging deliberate indifference against Dr Fuentes, Dr. Feinerman, Dr. Stephen Platt, Dr. Plk, Deana Medford, Chard Todaro, and

Derek Flatt related to injuries he received will being housed at Menard Correctional Center (Doc. 1). Specifically, Plaintiff's complaint alleged that while being housed at Menard he fell on his left ankle while playing basketball and when the ankle become swollen and painful, causing him to have difficulties walking up the stairs, he reported the injury the following day and received an X-ray and examination (Doc. 2). He was then sent back to his cell. Plaintiff alleges that after several weeks his ankle still remained swollen and painful but that when he reported his injuries to Defendants they gave him no further treatment (*Id.*). Further, Defendants allegedly informed Plaintiff that he needed no further treatment and that there was nothing wrong with him and his issues with his ankle were only mental (*Id.*). Sometime later Plaintiff discovered that his ankle was broken and that there was significant damage. Plaintiff allegedly filed a grievance which went unanswered (*Id.*). He was later transferred to a different facility and his ankle was treated (*Id.*).

Plaintiff's Complaint alleges that the Defendants were deliberately indifferent to his serious medical needs by failing to treat his broken ankle after the initial X-ray. His claims survived this Court's § 1915 review on March 31, 2011 (Doc. 2). Subsequently, Defendants Adrian D. Feinerman, M.D., Fe Fuentes, M.D., Mary Ann Kohring, ARNP, and Deana Medford filed a Motion to Dismiss arguing both that Plaintiff had failed to exhaust his administrative remedies (Docs. 45 & 46) and that Defendants were entitled to qualified immunity. Plaintiff has filed a Response to their motion (Doc. 53). After the motion was fully briefed, but before a Pavey hearing was held, Defendants Derek Flatt and Chad Todaro filed a motion for summary judgment (Docs. 64 and 65), also arguing that Plaintiff had failed to exhaust his administrative remedies. Defendants Feinerman, Fuentes, Kohring, and Medford also filed a subsequent motion for summary judgment (Docs. 66 & 67), reraising and further developing the arguments presented in their motion to dismiss. In response, Plaintiff filed a Response to each motion (Docs. 74, 75, 76, 79) as well as a list of exhibits in response to both motions (Doc. 80).

In all of his Responses, Plaintiff argued that he had tried to file grievances at the prison level by placing his grievances in the grievance box, but that the grievances were never returned to him. Based on the Seventh Circuit's opinion in *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008)**, the undersigned held a hearing in this matter on October 5, 2011. The following recommendations are based upon the evidence adduced at that hearing.

**B.     Factual Background**

At issue are four grievances Plaintiff claims he filed in regards to injuries he received to his ankle in February of 2009. Plaintiff claims that after he received treatment on February 11, 2009, he first submitted a grievance in regards to his medical treatment on March 25, 2009 which was never returned to him. Plaintiff also claims to have filed another grievance on the same issue in October of that year and then two more grievances in 2010, one on April 21, 2010 and one on June 29, 2010. The only grievances received by the ARB were the April 21, 2010 and June 29, 2010; however, the June 29, 2010 was ultimately rejected because it did not include the grievance officer's and chief administrative officer's responses. There appears to be no record with either the ARB or Menard Correctional Center regarding his grievances allegedly filed in March and October of 2009.

At the hearing, Plaintiff contended, under oath that he submitted his March 25, 2009 grievance to the cellhouse grievance box located at the entrance to east cell block. He also maintained that he followed the same procedure for his October 18, 2009 grievance he allegedly filed and filed that one because he had never received a response on his March 2009 grievance. Both grievances were attached to his Complaint, although the officer and CAO responses were blank. He also stated that he was aware of the grievance procedure at Menard, but that he believes he followed the procedure and did all he could as he had no control of what happens to the grievances once he places them in the grievance box.

As to the grievance dated March 25, 2009, Plaintiff acknowledged that it did not include the names of Defendants Flatt and Todero but he recalled that it discussed the staff of Menard in general. As to Defendants Fenierman, Fe Fuentes, Mary Ann Kohring, and Deana Medord, he stated that he did not include their names in either grievance because he did not know their names at the time and did not discover their names until he obtained his medical records sometime the following year. He did not recall any specific dates that he met with any of the Defendants from the health care unit and instead stated that he relied on the medical records in order to list those names. Plaintiff also stated that he had previously been disciplined for trying to learn guards and other potential Defendants' names.[1]

Neal Schwarz, a correctional counselor at Menard Correctional Center, also testified regarding the grievances allegedly deposited in March and October. As part of his job, Schwarz not only retrieves, reads, and handles grievances filed by inmates, but also meets with inmates on a regular sixty (60) day basis to discuss concerns and grievances the inmates have with the institution. After each meeting he prepares contact notes of the visits in order to memorialize the issues discussed with the prisoners. During the time frame at issue in this case, Schwarz served as a correctional counselor for East cellhouse, the cellhouse where Plaintiff was housed during most of his stay at Menard. Grievances, as Schwarz confirmed, are deposited in a mailbox at the entrance of each cell house, but can also be placed in the bars for the guards to pick up and deliver, or handed directly to the correctional counselor during his regular visits with the inmates. Only the correctional counselor and the lieutenant have keys to the mailbox although the correctional counselor normally retrieves the grievances from the mailbox.

---

[1] Plaintiff submitted a supplemental response to his Responses to motions for summary judgment regarding the disciplinary action allegedly brought against him for trying to learn staff's names. While Plaintiff's grievance regarding his discipline states that he was punished for looking at a guard's name tag, the Report actually shows that Plaintiff was disciplined for failing to show his own ID card to staff when asked to do so (Doc. 91 Ex. H at pp. 1 & 4).

Schwarz kept records of all the grievances he received and meetings with inmates in a cumulative counseling summary (Ex. 1) which was kept for each inmate including Plaintiff.

Schwarz reviewed his notes in Plaintiff's cumulative counseling summary (Ex. 1) from the time period at issue and informed the Court that during the month of April and October there were no notations regarding any lost grievances from Plaintiff. While Schwarz did note a grievance was filed in October, that grievance dealt solely with loss of good time credit. Schwarz also noted two grievances filed in March, but neither of those dealt with medical issues.[2] There were no grievances on record for the months at issue regarding medical treatment of Plaintiff's ankle, nor were there any notations in Schwarz's counselor notes regarding lost or unanswered grievances.

Schwarz testified that while he had never seen a grievance log or the codes that the grievance officers use to code the type of grievances received, he was generally familiar with the type of grievances filed by inmates. Reviewing the grievance log previously submitted by Defendants (Doc. 67 Ex. C) for May 2009 and the grievance code (Ex. 2), Schwarz testified that grievances filed by Plaintiff in May with the grievance counselors related to discipline procedures and the performance and duties of staff. Neither of the grievances filed with the grievance officer in May 2009 related to medical treatment or any injuries he received while at Menard. Schwarz did acknowledge that Plaintiff knew how the grievance system worked at Menard and that the number of grievances he filed during this time there was evidence that Plaintiff knew how to use the grievance system.

### III. Conclusions of Law

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment

---

[2] Schwarz noted, and his records reflect, that Plaintiff had submitted a grievance on March 2nd regarding indigent legal materials and on March 5th, Plaintiff submitted another grievance, this time asking for clothes and towels from the clothing house.

as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. § 1997e(a)**. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted.*" *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever

discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

**A.     Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Thomas was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who]

shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance, as Henry alleges he has done in this case. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a**). If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 U.S.C. §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on

an expedient basis. **20 U.S.C. §504.850(g)**.

**B.    Analysis**

    **1.    Defendants Feinerman, Fe Fuentes, Mary Ann Kohring, Deana Medford**

As to Plaintiff's claims of deliberate indifference as to the medical treatment of his injured ankle, Defendants Feinerman, Fe Fuentes, Mary Ann Kohring, and Deana Medford argue that Plaintiff has failed to exhaust his administrative remedies because he never submitted grievances as to the medical treatment he received for his broken ankle.[3] Plaintiff, in response, pointed to the grievances which he attached to his Complaint as proof that he had tried to file his grievances in the proper manner. He also testified under oath that he had deposited his grievances from March and October into the inmate grievance box in the east cell house but that he never received a response to either grievance. Plaintiff testified that as an inmate he could only follow directions and submit grievances in the grievance box as required by the institution, but could not force anyone to respond to the grievance. He also stated that he had problems in the past with this institution not responding to or losing grievances. Plaintiff argues that he did everything he could for exhaustion purposes. *See Walker v. Sheahan*, **526 F.3d 804, 809 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D. Ill 2010) ("The Seventh Circuit has**

---

[3] While Defendants acknowledge that the ARB received grievances from Plaintiff dated April 21, 2010 and June 29, 2010 (Doc. 1-2 at pp. 16, 20-21), both were untimely as the grievances were not filed with the institution until well over the sixty (60) days allowed for filing grievances related to his February 10, 2009 injury with the grievance officer. Further, the ARB returned Plaintiff's June 29, 2010 grievance because it did not include the proper responses from the institution level (Doc. 65 Ex. A at ¶¶ 7-8).

**held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)))**.

While Plaintiff is correct that if he filed his grievances and the proper authorities just failed to respond to his grievances he would have done all that was possible for exhaustion purposes, the Defendants have presented substantial evidence that Plaintiff did not, in fact, file grievances on March 25, 2009 and October 18, 2009, as he has alleged. Defendants point to the fact that neither of the grievances from those dates attached to Plaintiff's Complaint contain staff signatures or responses. Further, during the *Pavery* hearing, Defendants presented the testimony of Plaintiff's counselor, Neal Schwarz, who stated that he never received a grievance on either of those dates dealing with the matters at issue in this case. Specifically, Schwarz testified that as the correctional counselor for east cell block he would pick up inmate grievances from the grievance box as well as meet with inmate's on a regular basis to discuss their grievances and other issues the inmate's had. Reviewing the counseling summary notes that Schwarz took on Plaintiff (Exhibit 1), Schwarz testified that none of the grievance issues set out in the notes had anything to do with Plaintiff's medical care. Further, the counseling notes did not note any complaints from Plaintiff about lost grievances from that time period. The notes also revealed that while Plaintiff had submitted a grievance in October related to his good conduct credit, no grievance was submitted in October dealing with his injured ankle, nor were there any notations in either October or November of Plaintiff complaining about a lost or unanswered grievance. Schwarz noted that Plaintiff had previously sought to resubmit a grievance in May 2009 because the previous grievance had been lost or never responded to, but that grievance did not deal with Plaintiff's broken ankle. Further, Defendants offered Grievance Logs and Grievance Codes from the relevant time period showing that none of the grievances filed by Plaintiff between March and November 2009 dealt with his broken ankle.

Here, the undersigned finds that Defendants have met their burden of proving that Plaintiff has failed to exhaust his administrative remedies. They have presented substantial evidence that Plaintiff did not file his grievances as alleged, as none of the grievance logs nor the grievance codes indicate that a grievance related to his medical treatment for his ankle was ever filed during the relevant time period. Further, Schwarz testified that he neither received a grievance from the grievance box regarding Plaintiff's ankle nor did Plaintiff inform Schwarz of his grievance during any of their counseling contacts. There is also evidence that Plaintiff knew how to deal with lost or unanswered grievances as the record reflects that Plaintiff had previously refiled a grievance with Schwarz on a prior occasion when a grievance was lost, yet there is significant evidence that Plaintiff failed to follow that procedure in this case as the records do not indicate that Plaintiff spoke with Schwarz about a lost or unanswered grievance as to his ankle or sought to have Schwarz refile the grievance. As Defendants have presented substantial evidence to refute Plaintiff's claims, the undersigned **FINDS** that Plaintiff has failed to exhaust his administrative remedies and **RECOMMENDS** that Defendants' motion for summary judgment (Doc. 66) and motion to dismiss (Doc. 45) be **GRANTED** and Plaintiff's claims against Defendants Feinerman, Fe Fuentes, Mary Ann Kohring, and Deana Medford be **DISMISSED without prejudice** for failure to exhaust.

2.    **Defendants Derek Flatt and Chad Todaro**

Defendants Derek Flatt and Chad Todaro also argue that Plaintiff has failed to exhaust his administrative remedies against them on Plaintiff's claim that they failed to place him on a lower gallery due to his injured ankle. Like with Defendants Feinerman, Fe Fuentes, Mary Ann Kohring, and Deana Medford, Defendants Flatt and Todaro have met their burden of proving Plaintiff has failed to exhaust his administrative remedies as there is significant evidence that Plaintiff did not file his grievances as alleged based on the grievance logs, codes, and testimony of Schwarz. The Court also

notes that the only grievance which appears to mention Plaintiff's concerns about the failure to move him to a lower gallery is in his grievance dated March 25, 2009. While there is substantial evidence that this grievance was never received by the grievance counselor, even if it had been received, the grievance fails to name or describe Defendants Todaro and Flatt. In fact, the grievance does not complain about any guards or mention that guards were refusing to move him to a lower gallery. Instead, the grievance focuses mostly on his medical treatment and states that because of his lack of treatment for his ankle he can not walk properly but yet has to climb stairs daily (Doc. 1-2 at pp.18-19). He also asks in the relief section to be moved to a lower gallery. Plaintiff fails to name Todaro and Flatt, nor does he reference in general any guards that were refusing to transfer him to a lower gallery.

While Plaintiff's only grievance in regards to being moved to a lower gallery does not mention Todaro and Flatt, Plaintiff argues in his supplement (Doc. 92) that he was not informed by Menard that names or descriptions of guards or other prison staff had to be included in the grievance. The Court notes that this is the first time that Plaintiff has raised this argument, as he did not make this argument in his initial response or at the hearing. It is not proper now for Plaintiff to raise this new argument in a "sur-reply" which, contrary to Plaintiff's statements in the supplement, was not directed by the Court.[4] Plaintiff had numerous opportunities in which to raise this argument and failed to do so. While Plaintiff claims he was not aware of nor had time to prepare for the hearing and only proceeded with the matter for fear of angering the Court if he asked for a continuance, the undersigned

---

[4] Plaintiff's supplement states that it is being filed "in compliance with the Court's instructions at the October 5, 2011 hearing." However, Plaintiff is mistaken. The Court did not order Plaintiff to file any additional briefing. The Court Ordered Defendants to provide a disciplinary report issued to Plaintiff in March 2009 and a grievance Plaintiff filed in response to that disciplinary report. At the hearing, Plaintiff also informed the Court that he had an affidavit from a witness that he would like to provide to the Court and the Court granted Plaintiff leave to file a supplement to *only* include the witness affidavit. Instead, Plaintiff filed numerous documentation along with additional arguments which he labeled a supplement. Plaintiff was not given leave to file this supplemental argument and thus the Court finds that the supplement was improperly filed.

offered Plaintiff the option of resetting the hearing and inquired of Plaintiff numerous times as to whether he was able to proceed with the hearing and Plaintiff acknowledged that he was willing and able to proceed.  Further, even if the Court accepted Plaintiff's supplemental pleadings, it is not clear to the Court that Plaintiff was unaware of the requirement to name or describe prison staff in the grievances. While Plaintiff provided copies of the manuals which admittedly do not mention the identification requirements for a grievance, Plaintiff has also provided sections of the Illinois Administrative Code which state that an inmate is required to name or describe individuals who are the subject of the grievance.  Plaintiff has not provided any evidence that he did not know the requirements of the Illinois Administrative Code at the time that he filed his March 25, 2009 grievance other than his statements that he was not informed of the requirement in the prisoner handbook.  Thus, the Court finds that Plaintiff has failed to exhaust his administrative claims as to Defendant Todaro and Flatt's failure to move him to a lower gallery both because the evidence on the record suggests that the grievance on March 25, 2009 which mentions the lower gallery was not exhausted and, even if had been fully exhausted, the grievance does not mention or describe in any fashion Todaro or Flatt.  Thus, the undersigned **FINDS** that Plaintiff has failed to exhaust his administrative remedies and **RECOMMENDS** that Defendants' motion for summary judgment (Docs. 64) be **GRANTED** and the claims against Defendants Todaro and Flatt be **DISMISSED without prejudice** for failure to exhaust.

## IV.  Conclusion and Recommendation

In conclusion, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Docs. 45 & 46), Motion for Summary Judgment (Doc. 66 & 67), and Defendants Flatt's and Todaro's Motion for Summary Judgment (Doc. 64 & 65) be **GRANTED** and the claims against Defendants Flatt, Todaro, Feinerman, Fe Fuentes, Mary Ann Kohring, and Deana Medford be **DISMISSED**

**without prejudice**. Should this Report and Recommendation be accepted, the only claiming **remaining** before this Court will be Plaintiff's claim of deliberate indifference against **Defendant Dr. Platt**.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

**IT IS SO ORDERED**.

DATED: November 9, 2011

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge