IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL THOMAS, Inmate #B-71744, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 10-cv-0902-MJR-SCW |
| | ) | |
| DR. FUENTES, DR. FEINERMAN, STEPHEN PLATT, MARY ANN KOHRING, DEANA MEDFORD, CHAD TODARO, and DEREK FLATT, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

1. Introduction

Plaintiff Michael Thomas, an inmate in the custody of the Illinois Department of Corrections, filed his Complaint (Doc. 1) on November 10, 2010, pursuant to 42 U.S.C. § 1983, alleging that the Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. More specifically, Thomas alleges that on February 10, 2009, while he was housed at Menard Correctional Center, he fell while playing basketball and injured his left ankle and Defendants, Dr. Fuentes, Dr. Feinerman, Dr. Stephen Platt, Deana Medford, Chard Todaro, and Derek Flatt, failed to properly diagnose and treat his injury, and refused to move him to a lower gallery, despite Plaintiff's obvious difficulties walking. According to Plaintiff Thomas, it was not until early 2010, after he was transferred to Hill Correctional Center, that he was diagnosed with a broken ankle and joint damage.

1

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Report and Recommendation of United States Magistrate Judge Stephen C. Williams regarding Defendants Feinerman, Fuentes, Kohring and Medford's Motion to Dismiss (Doc. 45) and Motion for Summary Judgment (Doc. 66), and Defendants Flatt and Todaro's Motion for Summary Judgment (Doc. 64) is before the Court (Doc. 99). Also before the Court is Plaintiff Thomas's Objections to the Report and Recommendation (Doc. 101), as well as Defendants Flatt and Todaro's Response (Doc. 102).

Magistrate Judge Williams recommends that that Defendants' motions be granted and all claims against them be dismissed without prejudice, due to Plaintiff's failure to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). Plaintiff Thomas objects that Judge Williams's conclusions are clearly erroneous and contrary to law. Plaintiff presents two principal arguments. First, Thomas argues that it was error for Judge Williams to conclude that Plaintiff's March 25 and October 18, 2009, grievances were never filed. Second, that it was error for Judge Williams to require Plaintiff's grievances to specifically identify the Defendants in his grievance(s).

2. Applicable Legal Standards

Plaintiff Thomas has objected to the Report and Recommendation; accordingly, the Court will undertake de novo review of the portions of the Report to which specific objection was made. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject or modify the recommended decision, or recommit the matter to the Magistrate Judge with instructions. Fed.R.Civ.P. 72(b); Local Rule 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902,

2

904 (7th Cir. 1999).

Defendants have moved for dismissal and for summary judgment, asserting that Plaintiff Thomas failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). *See* Docs. 45, 46, 64, 65, 66, 67. As a procedural matter, Defendants cite Federal Rules of Civil Procedure 12(b)(6) and 56. However, analysis of the exhaustion requirement is governed by unique procedures.

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners to exhaust administrative remedies before filing suit in federal court. That requirement applies to all suits challenging prison conditions under 42 U.S.C. § 1983, as well as actions under "any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies under the PLRA is a condition precedent to suit in federal court. *Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002). The law of this Circuit establishes that the inmate must comply with the rules and procedures governing grievances in the particular institution of incarceration, including any time limitations and *all steps* in a multi-step grievance process.

To properly exhaust remedies within the meaning of the PLRA, the inmate "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *See also Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005). If administrative remedies are *not* properly exhausted prior to commencement of the federal lawsuit, the district court must dismiss the suit (or any claims not

fully exhausted). *Burrell*, 431 F.3d at 285; *Jones v. Bock*, 549 U.S. 199, 201 (2007).[1] The IDOC's three-stage administrative process for resolving inmate grievances is delineated in 20 Ill. Admin. Code Section 504.810. The inmate is required to follow the sequential process, concluding with an appeal in writing to the Director of the IDOC, by way of the Administrative Review Board (ARB). *See* 20 Ill. Admin. Code §§ 504.810, 504.830, 504.850.

Failure to exhaust administrative remedies is an affirmative defense; the defendant correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004). A remedy is "available" if the administrative procedure can lead to some relief, even if it is not the precise relief the inmate wants. *See Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001); *Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001). "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).

In *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit delineated a three-step process for cases in which exhaustion is contested.

(1) The district judge conducts a hearing on exhaustion and permits

---

[1] Dismissal is without prejudice to initiating another action, if appropriate, after all remedies have been exhausted. *Burrell*, 431 F.3d at 285, *citing Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice ...."), and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("all dismissals under § 1997e(a) should be without prejudice"). *Accord Barnes v. Briley*, 420 F.3d 673, 676 (7th Cir. 2005).

whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742. [1]

Typically, when deciding a motion to dismiss or for summary judgment, all facts are construed in the light most favorable to, and all legitimate inferences are drawn in favor of, the non-moving party. *See Regent v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010). However, when ruling on the exhaustion issue, the Court may make credibility determinations and findings of fact. *See Pavey v. Conley*, 663 F.3d 899, 904-905 (7th Cir. 2011) (citing *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.'")).

3. Analysis

On October 5, 2011, Magistrate Judge Williams conducted an evidentiary hearing

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Williams was designated to conduct the *Pavey* hearing and issue a Report and Recommendation.

in accordance with *Pavey*. *See* Doc. 96 (Transcript). Plaintiff Thomas does not specifically take issue with the recitation of the evidence and issues presented in the Report, although he would have the Court consider certain evidence and arguments rejected by Magistrate Judge Williams. Rather, Thomas takes issue with the credibility determinations made by Magistrate Judge Williams. Therefore, the recitation of facts set forth in the Report is repeated here and shall serve as a starting place for analysis, in order to place the issues in context.

> At issue are four grievances Plaintiff claims he filed in regards to injuries he received to his ankle in February of 2009. Plaintiff claims that after he received treatment on February 11, 2009, he first submitted a grievance in regards to his medical treatment on March 25, 2009 which was never returned to him. Plaintiff also claims to have filed another grievance on the same issue in October of that year and then two more grievances in 2010, one on April 21, 2010 and one on June 29, 2010. The only grievances received by the ARB were the April 21, 2010 and June 29, 2010; however, the June 29, 2010 was ultimately rejected because it did not include the grievance officer's and chief administrative officer's responses. There appears to be no record with either the ARB or Menard Correctional Center regarding his grievances allegedly filed in March and October of 2009.[2]
>
> At the hearing, Plaintiff contended, under oath that he submitted his March 25, 2009 grievance to the cellhouse grievance box located at the entrance to east cell block. He also maintained that he followed the same procedure for his October 18, 2009 grievance he allegedly filed and filed that one because he had never received a response on his March 2009 grievance. Both grievances were attached to his Complaint, although the officer and CAO responses were blank. He also stated that he was aware of the grievance procedure at Menard, but that he believes he followed the procedure and did all he could as he had no control of what happens to the grievances once he places them in the grievance box.
>
> As to the grievance dated March 25, 2009, Plaintiff acknowledged that it did not include the names of Defendants Flatt and Todero but he recalled that it discussed the staff of Menard in general. As to Defendants Fenierman, Fe Fuentes, Mary Ann Kohring, and Deana Medord, he stated that he did not include their names in either grievance because he did not know their names at the time and did not discover their

---

[2] The April 21, 2010, grievance will be analyzed anew, as this Court views it in a different procedural posture than is reflected in the Report and Recommendation.

names until he obtained his medical records sometime the following year. He did not recall any specific dates that he met with any of the Defendants from the health care unit and instead stated that he relied on the medical records in order to list those names. Plaintiff also stated that he had previously been disciplined for trying to learn guards and other potential Defendants' names.

Neal Schwarz, a correctional counselor at Menard Correctional Center, also testified regarding the grievances allegedly deposited in March and October. As part of his job, Schwarz not only retrieves, reads, and handles grievances filed by inmates, but also meets with inmates on a regular sixty (60) day basis to discuss concerns and grievances the inmates have with the institution. After each meeting he prepares contact notes of the visits in order to memorialize the issues discussed with the prisoners. During the time frame at issue in this case, Schwarz served as a correctional counselor for East cellhouse, the cellhouse where Plaintiff was housed during most of his stay at Menard. Grievances, as Schwarz confirmed, are deposited in a mailbox at the entrance of each cell house, but can also be placed in the bars for the guards to pick up and deliver, or handed directly to the correctional counselor during his regular visits with the inmates. Only the correctional counselor and the lieutenant have keys to the mailbox although the correctional counselor normally retrieves the grievances from the mailbox. Schwarz kept records of all the grievances he received and meetings with inmates in a cumulative counseling summary (Ex. 1) which was kept for each inmate including Plaintiff.

Schwarz reviewed his notes in Plaintiff's cumulative counseling summary (Ex. 1) from the time period at issue and informed the Court that during the month of April and October there were no notations regarding any lost grievances from Plaintiff. While Schwarz did note a grievance was filed in October, that grievance dealt solely with loss of good time credit. Schwarz also noted two grievances filed in March, but neither of those dealt with medical issues. There were no grievances on record for the months at issue regarding medical treatment of Plaintiff's ankle, nor were there any notations in Schwarz's counselor notes regarding lost or unanswered grievances.

Schwarz testified that while he had never seen a grievance log or the codes that the grievance officers use to code the type of grievances received, he was generally familiar with the type of grievances filed by inmates. Reviewing the grievance log previously submitted by Defendants (Doc. 67 Ex. C) for May 2009 and the grievance code (Ex. 2), Schwarz testified that grievances filed by Plaintiff in May with the grievance counselors related to discipline procedures and the performance and duties of staff. Neither of the grievances filed with the grievance officer in May 2009 related to medical treatment or any injuries he received while

7

> at Menard. Schwarz did acknowledge that Plaintiff knew how the grievance system worked at Menard and that the number of grievances he filed during this time there was evidence that Plaintiff knew how to use the grievance system.

Doc. 99, pp. 3-5 (footnotes omitted).

Magistrate Judge Williams concluded that, despite Plaintiff Thomas's assertions to the contrary, he, Thomas, did <u>not</u> file grievances on March 25, 2009, and October 18, 2009. Judge Williams further concluded that the April 21, 2010, grievance was untimely, even though it proceeded through all stages of the administrative process. *See* Doc. 67-4, pp. 5-7; Doc. 80-1, pp. 18-20). Judge Williams found Plaintiff's June 29, 2010, grievance to have been procedurally defaulted, in that the Administrative Review Board (the final step in the exhaustion process) rejected the grievance because it did not include the counselor's response or the responses of the Grievance Officer or Chief Administrative Officer, as required. *See* Doc.67-4, p. 9; Doc. 80-1, pp. 4-5.

If none of Plaintiff's four grievances has been exhausted, *and* administrative remedies have not been rendered "unavailable," then none of the claims against the Defendants can proceed. Consequently, this Court's analysis begins with the four grievances.

    a. <u>June 29, 2010</u>

Plaintiff Thomas does not object to Magistrate Judge Williams's conclusion that the June 29, 2010, grievance was not exhausted; therefore the Court will adopt that aspect of the Report.

    b. <u>April 21, 2010</u>

Plaintiff does not specifically object to Magistrate Judge Williams's conclusion that, although the April 21, 2010, grievance proceeded through all stages of the administrative

8

process, it was not filed within 60 days of the events at issue and, therefore, was untimely. *See* Doc. 99, p. 9 n. 3; and 20 Ill. Admin. Code § 504.810(a). However, that legal conclusion is incorrect. Consideration and resolution (on the merits) of an untimely grievance will not be second-guessed by the federal judiciary. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). The Administrative Review Board did not reject the grievance as untimely; instead, the Board ruled on the merits of the grievance. *See* Doc. 67-4, p. 5. Nevertheless, that does not help Plaintiff.

A reasonable reading of the April 21 grievance (Doc. 67-4, p. 7) reveals that it does not present a recognizable grievance regarding the allegedly inadequate medical treatment Plaintiff received at Menard -- regardless of the fact that Defendants Feinerman, Fuentes, Kohring and Medford are not mentioned by name. The grievance was filed while Plaintiff was housed at Hill Correctional Center in Galesburg, Illinois, and it indicates that it pertains to "Medical Treatment" at "Galesburg and Menard." The grievance explains that Plaintiff was seen by medical personnel at Hill on April 14, 2010, regarding the ankle injury he incurred at Menard in 2009. The doctors at Hill told Plaintiff that, due to the age of his injury, there was little or nothing that could be done to help improve his pain and discomfort. In the grievance Plaintiff states, "I don't believe that my ankle was treated properly at Menard and I'd like to have my ankle . . . better with any recovery technological device because I don't want to keep being 'susceptible' to pain and discomfort." The grievance requests "a thorough examination of [his] ankle with necessary technological devices," and "to have pain and discomfort improved." Plaintiff's grievance was construed by Hill officials and the Administrative Review Board as a request for current treatment, which those prison officials concluded had been adequate. This Court also fails to perceive that

Plaintiff was attempting to grieve the medical care provided at Menard. The reference to Menard is merely historical. Therefore, the April 21, 2010, grievance cannot be found to satisfy the exhaustion requirement relative to the medical claims against Defendants Feinerman, Fuentes, Kohring and Medford. The grievance makes no mention of the gallery placement issue relative to Defendants Flatt and Todaro.

      c.    March 25 and October 18, 2009

Magistrate Judge Williams found substantial evidence that the March 25 and October 18, 2009, grievances were never filed. Although Plaintiff had testified that he did file the grievances[3], Judge Williams did not make a specific finding that Plaintiff was not credible, but he implicity did so. In any event, this Court has reviewed the record evidence anew and reaches the same conclusion. Again, it must be noted that the Court may "credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575 (1985).

Plaintiff's counselor, Neal Schwarz, is the first step in the grievance process. Schwartz testified that he never received the grievances, his counseling summary notes did not reflect any such grievances, nor did his notes reflect grievances regarding the loss of, or failure to respond to, March 25 and October 18, 2009, grievances about the issues in this case. *See* Docs. Doc. 96, pp. 29-32 (Schwartz's Hearing Testimony); Doc. 67-3 (Menard Grievance Log). It is telling that Plaintiff Thomas had lodged other grievances during the relevant time period, and he

---

[3] Plaintiff also objects that Judge Williams did not discuss the affidavit of inmate Anthony Hamilton (Doc. 80-1, pp. 6-7), which states that, as a general matter, when Hamilton was housed at Menard grievances went unanswered. Hamilton's affidavit does not specifically address the grievances at issue and, therefore, it does little to bolster Plaintiff's position.

had complained about other lost or unanswered grievances, but he did *not* mention to his counselor any problem regarding the March 25 and October 18 grievances. Although Plaintiff did mention in his June 29, 2010, grievance that he had filed grievances regarding his ankle which went unanswered (without mention of gallery placement), hi waiting so long raises doubts. *See* Doc. 80-1, pp. 4-5. Plaintiff correctly observes that he is not required to resubmit grievances, but these small bits of circumstantial evidence add up. This Court also considers the fact that Magistrate Williams heard all of the testimony, as opposed to this Court's review of the dry record; therefore, his credibility determinations are given some weight. When viewing the evidence as a whole, the Court gives greater weight to Mr. Schwartz's testimony, as opposed to Plaintiff's, because Schwartz's assertion that he did not receive the two grievances is further bolstered by his practices and records. In contrast, there is little or nothing to bolster Plaintiff's assertion that he did file the grievances, which is undercut as already discussed. Therefore, this Court finds that Plaintiff Thomas did not file his March 25 and October 18, 2009, grievances. Defendants have met their evidentiary burden.

Having concluded that the March 25 and October 18, 2009, grievances were never filed, the Court need not delve into Plaintiff's arguments that he had been provided with an old, incorrect copy of the grievance requirements and had not been informed that amended rules required him to identify the involved prison officials by name or description.

4. <u>Conclusion</u>

For the reasons stated, the Court **ADOPTS** Magistrate Judge Williams's Report and Recommendation (Doc. 99) except as specifically noted, and **GRANTS** Defendants Feinerman, Fuentes, Kohring and Medford's Motion to Dismiss (Doc. 45) and Motion for

11

Summary Judgment (Doc. 66), and Defendants Flatt and Todaro's Motion for Summary Judgment (Doc. 64). Accordingly, all claims against Defendants Feinerman, Fuentes, Kohring Medford, Flatt and Todaro are **DIMISSED**, without prejudice. The Court will not formally enter final judgment against Plaintiff and in favor of those defendants until all claims against all Defendants are resolved.

Defendant Dr. Platt did not join in the motions to dismiss and for summary judgment regarding exhaustion. Therefore, Plaintiff Thomas's Eight Amendment claim against Dr. Platt shall proceed.

**IT IS SO ORDERED.**

**DATED:   February 22, 2012**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**