IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL THOMAS, #B-71744, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10–cv–902–MJR–SCW |
| ) | |
| STEPHEN PLATT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**I.   Introduction**

Before the Court is Defendant Dr. Stephen Platt's Motion for Summary Judgment (Docs. 109 & 110).  Specifically, Defendant argues that he is entitled to summary judgment on Plaintiff's deliberate indifference claim because Defendant properly treated Plaintiff's left ankle injury and his diagnosis and course of treatment was within the bounds of accepted practice and standards.  Plaintiff has filed a response in opposition to the motion along with a supplement and numerous exhibits (Docs. 111, 112, & 113).  Based on the following, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 109).

**II.   Factual Background**

This matter stems from events which occurred while Plaintiff was housed at Menard Correctional Center.  Plaintiff alleges in his Complaint that while housed at Menard Correctional Center that Defendant Dr. Stephen Platt was deliberately indifferent in diagnosing and treating Plaintiff's injured ankle.  Plaintiff was incarcerated at Menard from May 2008 to

February 2010 (Doc. 110 Ex. A at p. 7).

On February 11, 2009, at 7:45 a.m., Plaintiff went to the health unit for an injury to his left ankle (Doc. 110 Ex. B at ¶ 5, Ex. C at p. 3). Plaintiff informed the Health Care Unit that he was playing ball and came down sideways on his ankle (*Id.*). Medical records indicate that Plaintiff's ankle was swollen and he had a slow, steady gait (Doc. 110 Ex. C at p. 3). Plaintiff was referred to the doctor. At 9:00 a.m. that same day, Plaintiff saw a registered nurse (Doc. 110 Ex. B at ¶6, Ex. C at p.1). The nurse noted that Plaintiff's ankle was swollen and that Plaintiff limped (*Id.*). Plaintiff was again referred to a doctor. At 9:15 a.m., Plaintiff was seen by Dr. Fuentes (Doc. 110 Ex. B at ¶7, Ex. C at p.1). Plaintiff informed the doctor that he was playing basketball the day before and landed on his ankle (*Id.*). The medical records again note that Plaintiff's ankle was swollen (Doc. 110 Ex. C at p.1). Dr. Fuentes diagnosed Plaintiff with a sprained ankle but ordered x-rays of the ankle to rule out a fracture (Doc. 110 Ex. B at ¶7; Ex. C at p.1). At 2:00 p.m. that same day Plaintiff had three separate views of x-rays taken of his left ankle (Doc. 110 Ex. B at ¶8, Ex. C at p. 4).

The radiologist report indicates that small radio-density was noted near the tip of the lateral malleolus suggesting a chip fracture (Doc. 110 Ex. C at p. 26-27). The report also notes minimal subluxation and no gross dislocation, along with soft tissue swelling (*Id.*). On February 17, 2009, Dr. James Krieg also reviewed the x-rays of Plaintiff's ankle (Doc. 110 Ex. B at ¶10, Ex. C at p. 5). He noted a possible chip fracture and scheduled to see Plaintiff within seven days (*Id.*). Medical records from February 22, 2009, indicate that Plaintiff was scheduled to see Dr. Fuentes on February 23, 2009, but Dr. Feinerman wanted Plaintiff to be seen by Dr. Platt (Doc. 110 Ex. C at p. 5). Plaintiff met with Dr. Platt on March 6, 2009 (Doc. 110 Ex. B at

¶13, Ex. C at p. 6). According to the medical records, Dr. Platt reviewed the x-rays and examined Plaintiff's ankle (*Id*.). As part of the physical examination of the ankle, Dr. Platt tested the stability of the ligaments. Dr. Platt noted that the ligaments were stable and that no swelling was present, although Plaintiff noted some tenderness in the tip of the fibula (Doc. 110 Ex. B at ¶13; Ex. C at p.6). Dr. Platt diagnosed Plaintiff with a healing strain that required no restrictions on Plaintiff's activities (*Id.*). Plaintiff disagrees with the diagnosis and believes that Dr. Platt fabricated or misstated the diagnosis, originally telling him nothing was wrong with his ankle (Doc. 110 Ex. A at p. 28). According to Plaintiff, he read the radiology report months later and it indicated he had a dislocation, ligament damage and a fracture (*Id*. at p.29). He also claims that other inmates experienced the same problem in the past with the same doctors labeling fractures of the ankle as strains (*Id*.). Because of this diagnosis, Plaintiff was not relocated to a lower gallery or to the Health Care Unit, nor was he provided any devices to assist him in walking (Doc. 112 at pp. 4-5; Doc. 113 Ex. 12 at ¶¶ 7 & 13). According to Dr. Platt, an inmate who is able to negotiate stairs, even with some discomfort, is fine to remain in the cell house (Doc. 113 Ex. 12 at ¶ 7).

As already noted, the radiologist report indicates soft tissue swelling, a chip fracture, minimal subluxation and no gross dislocation (Doc. 110 Ex. C at p. 26-27). Dr. Platt explains that when an ankle is rolled it is not uncommon for a small fragment of bone to pull off from the tip of the fibula (Doc. 110 Ex. B at ¶15). However, the treatment for such an injury, according to Dr. Platt, is the same as for a sprained ankle (*Id*.). The ankle does not require a cast or restriction in movement, as the chip will eventually reattach itself (*Id*.).

Plaintiff was again seen in the Health Care Unit on July 3, 2009 (Doc. 110 Ex. C

at p. 9). No swelling or redness was present and Plaintiff had good range of movement. Plaintiff was prescribed Tylenol (*Id*.). Plaintiff was also seen in the Health Care Unit on July 20, 2009, for ankle pain (*Id*. at p.10). Again, there was no swelling, redness, bruising or limitation of movement, but the ankle was tender (*Id*.). On July 27, 2009, Plaintiff was again seen and x-rays were ordered (*Id*. at p. 11). The second set of x-rays was normal; no abnormalities were seen (Doc. 110 Ex. C at p.28).

Plaintiff Thomas alleges that Defendant Platt was deliberately indifferent by failing to adequately treat him, and by causing him to have to climb to the seventh gallery floor several times per day, which Plaintiff alleges further damaged his ankle.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1027 (7th Cir. 2004). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that

"alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004).  *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial, whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001); *Sybron Transition Corporation v. Security Insurance Company of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997).

A showing of a mere factual disagreement between the parties is insufficient, the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit.  *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).  A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## IV. Analysis

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

The Defendant does not argue that Plaintiff did not have a serious medical condition, instead Defendant argues that he did not have the sufficiently culpable state of mind. The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id*. at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653.

"Whether a prison official had the requisite knowledge of a substantial risk is a

6

question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted). A plaintiff does not have to prove that his complaints of pain were "literally ignored," only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). The Seventh Circuit has noted that the standard is "a high hurdle…because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Roasrio v. Brawn*, 670 F.3d 821-22 (7th Cir. 2012) (*Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

    Defendant Platt argues that he is entitled to summary judgment because he did not act with deliberate indifference. Plaintiff was seen by the Health Care Unit the morning after his injury and in fact spent the entire day in the Health Care Unit, being seen by various personnel, ultimately being examined by Dr. Fuentes who ordered x-rays of Plaintiff's ankle. While Dr. Fuentes reviewed the x-rays and determined that Plaintiff's ankle was strained, Dr. Krieg reviewed the x-rays and determined that Plaintiff had a chip fracture, which the radiologist's report confirmed. Neither of these Defendants is still in the case; the only claim that remains is whether Dr. Platt was deliberately indifferent in *his* treatment of Plaintiff.

Plaintiff saw Dr. Platt on March 6, 2009, at which time Dr. Platt reviewed the x-rays and examined Plaintiff's ankle. Plaintiff does not deny that Dr. Platt examined him. Instead, Plaintiff argues that Dr. Platt was deliberately indifferent by fabricating the medical records and failing to treat Plaintiff's ankle injury causing him further injury. However, there is simply no evidence in the record to support Plaintiff's claim. Instead, the record shows that Dr. Platt followed up with Plaintiff after Plaintiff's initial treatment by Dr. Fuentes, thoroughly examined Plaintiff's ankle, and determined that the ankle was healing and, therefore, no restrictions on Plaintiff's activities were required. Dr. Platt also reviewed the radiologist's report, so he was aware of the chip fracture, but he stated that the standard care for a chip fracture is the same as for a sprained ankle. Dr. Platt chose to continue with the same conservative treatment Plaintiff had been receiving. Dr. Platt's treatment of Plaintiff does not constitute deliberate indifference, nor is there any evidence in the record suggesting that Dr. Platt was deliberately indifferent to Plaintiff's injuries or that he fabricated Plaintiff's diagnosis.[1]

While Plaintiff claims that he should have been given a cast or bandage, or some other form of equipment to help him walk, Plaintiff is "not entitled to demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 19997). Plaintiff's mere dissatisfaction with Dr. Platt's course of continued conservative treatment also does not constitute deliberate

---

[1] Plaintiff tries to argue that Dr. Platt's deliberate indifference is evidenced by medical personnel's treatment of inmate Gregerson, who also injured his ankle while playing basketball. According to Gregerson's affidavit, he too had his injury misdiagnosed as a sprain when it was actually a fracture (Doc. 113 Ex. 15). Gregerson also states that he was required to walk up stairs to his cell on the fifth gallery. However, Gregerson's injury took place on November 8, 2005, and there is no indication in the record or his affidavit that Dr. Platt treated him or that the medical staff at Menard were deliberately indifferent to his injuries. The Court fails to see how the treatment of Gregerson some four years prior to Plaintiff's injuries evidences Dr. Platt's alleged deliberate indifference on March 6, 2009.

indifference. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2007) (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citing *Estella v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Dr. Platt stated in his affidavit that, based on his experience, a cast or any other type of restrictive movement is not needed as a bone chip re-attaches itself without any restriction on the bone. Dr. Platt's statements about treatment for a bone chip are supported by the subsequent x-rays of Plaintiff's ankle, that Plaintiff's ankle had fully healed and he did not suffer from any type of bone, joint or soft tissue abnormalities. There is simply nothing in the record to suggest that Dr. Platt's examination of Plaintiff on March 6, 2009, or his chosen course of treatment constituted deliberate indifference.

Plaintiff also maintains that Dr. Platt was deliberately indifferent by requiring Plaintiff to remain on the seventh floor gallery, which he claims caused further injury. However, there is nothing in the record to suggest that Dr. Platt had any control over Plaintiff's housing assignment or that Plaintiff asked to be moved to a lower gallery due to his injury. Dr. Platt stated that if an inmate is able to walk, then he is returned to his assigned housing location, but if he is not able to walk then the inmate is usually kept in the Health Care Unit (Doc. 113 Ex. 12 at ¶¶ 2 & 7). Plaintiff has offered no evidence that he could not walk. In fact, the medical reports indicate that Plaintiff was able to walk on every occasion he was in the Health Care Unit, although sometimes with a slow gait and some tenderness. There is no evidence in the record to support Plaintiff's claim that Dr. Platt was deliberately indifferent by failing to house Plaintiff on a lower gallery. Thus, the Court finds that Dr. Platt is entitled to summary judgment on Plaintiff's deliberate indifference claim.

## V. Conclusion

For the reasons stated, the Court **GRANTS** Defendant Stephen Platt's motion for summary judgment (Doc. 109). As there are no remaining defendants in this case, the Court **DIRECTS** the Clerk of Court to enter final judgment in this case, against Plaintiff Thomas and in favor of Defendants.

**IT IS SO ORDERED**.
**DATED: October 12, 2012**

                                          s/ *Michael J. Reagan*
                                          **MICHAEL J. REAGAN**
                                          **UNITED STATES DISTRICT JUDGE**